**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REPLICA AUTO BODY PANELS AND AUTO SALES INC., | No. 4:19-CV-02018 |
| Plaintiff, | (Judge Brann) |
| v. | |
| INTECH TRAILERS INC., | |
| Defendant. | |

**MEMORANDUM OPINION**

**APRIL 16, 2020**

This case arises out of the sale of an allegedly defective stacker trailer and is premised on this Court's diversity jurisdiction. Defendant inTech Trailers Inc. moved to dismiss the complaint on December 6, 2019. That motion is now ripe for disposition.

## I.    BACKGROUND[1]

Plaintiff Replica Auto Body Panels and Auto Sales Inc. is a Pennsylvania corporation based in Lackawanna County, Pennsylvania. inTech is an Indiana corporation headquartered in Nappanee, Indiana. inTech is not incorporated in

---

[1] The facts in this section are drawn from Replica's complaint. *See Sherman v. John Brown Ins. Agency Inc.*, 38 F. Supp. 3d 658, 662–63 (W.D. Pa. 2014). As is appropriate on a motion to dismiss, I accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Id.*

Pennsylvania, but it is registered as a foreign corporation doing business within the Commonwealth.[2]

Replica's President, Paul Bochon, is also an amateur racecar driver who advertises Replica on his car.[3] On May 2, 2018, Replica ordered a custom stacker trailer to transport Bochon's racecar to events across the country through one of inTech's dealerships located in Florida.[4] Delivery was completed in Indiana.[5]

After eleven months of use, Bochon noticed parts of the stacker trailer became warped, and he discovered cracks in its frame.[6] Concluding that the inTech stacker trailer was inoperable as a result of these defects, Bochon paid to lease a different trailer.[7]

On October 21, 2019, Replica filed suit against inTech in the Court of Common Pleas of Lycoming County, Pennsylvania.[8] On November 22, 2019,

---

[2] Decl. of Dustin Lannan ¶ 4, Doc. 11-3.

[3] Compl. ¶¶ 7–8, Doc. 1.

[4] *Id.* at ¶ 10; Decl. of Dustin Lannan ¶ 8. It strikes this Court as odd that a local auto body shop would undertake great expense to advertise far outside of the area where it conducts business. A more cynical factfinder might doubt that Replica in fact conducted this transaction, an allegation noticeably worded ambiguously in the complaint. *See* Compl. ¶ 11. Instead, a more natural conclusion might be that Bochon executed it to further his own interest in amateur racecar driving. However, whether Replica is the proper plaintiff has not been challenged by inTech, and, interpreting the allegations in the light most favorable to Replica, for purposes of this motion I find that it is the proper party in interest.

[5] *Id.* at ¶ 14.

[6] *Id.* at ¶¶ 15–16.

[7] *Id.* at ¶ 20.

[8] *See id.* at 1.

inTech removed the action to this Court.[9] On December 6, 2019, inTech moved to dismiss the complaint.[10]

## II.   LEGAL STANDARD

To survive a motion to dismiss, a plaintiff is required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."[11] A claimant must state a plausible claim for relief.[12] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] The plaintiff's factual allegations must rise above the speculative level, but the plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."[14] A court ruling on a motion to dismiss must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[15]

---

[9] Notice of Removal, Doc. 1.

[10] Def. inTech Trailers Inc.'s Mot. to Dismiss Pl.'s Complaint, Doc. 5.

[11] Fed. R. Civ. P. 8.

[12] *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (*citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[13] *Thompson*, 748 F.3d at 147.

[14] *Id.*

[15] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

## III.  DISCUSSION

InTech argues that Replica's complaint is both procedurally and substantively flawed. Procedurally, inTech objects that this action is improperly venued in the United States District Court for the Middle District of Pennsylvania, that the action should be transferred to the United States District Court for the Northern District of Indiana, and that this Court lacks personal jurisdiction over it. On the merits, inTech contends that Replica's allegations fail to state a claim.

### A.  Venue

InTech moves to dismiss the complaint on the basis that venue is improper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b). Section 1391(b) governs venue for diversity actions that are brought in federal court. However, this action was not "brought" in federal court—it was removed.[16] Venue for removed diversity actions is instead governed by 28 U.S.C. § 1441(a), which provides that venue is proper in "the district court of the United States for the district and division embracing the place where such action is pending."[17] This action is

---

[16] *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–66 (1953) ("Section 1391(a) limits the district in which an action may be 'brought.' . . . This action was not 'brought' in the District Court, nor was Respondent 'sued' there; the action was brought in a state court and removed to the District Court.").

[17] *See also id.* at 666 ("Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'"); *Eastern Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, No. 3:14-CV-00717, 2015 WL 679220, at *1 (M.D. Pa. Feb. 17, 2015).

properly venued in this Court because this Court embraces the Court of Common
Pleas of Lycoming County.

In the alternative to dismissal, inTech moves this Court to transfer the action
to the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a). That statute
provides that "[f]or the convenience of parties and witnesses, in the interest of
justice, a district court may transfer any civil action to any other district or division
where it might have been brought or to any district or division to which all parties
have consented." This rests the decision whether to transfer the action in the
discretion of the district court.[18] However, transfer is generally disfavored, and the
burden of establishing the need for transfer rests with the movant.[19]

InTech has not identified any particular hardship that would result from
litigating in the Middle District of Pennsylvania. The location of documents or
witnesses in Indiana is noted, but inTech, a large corporation, should not face any
significant obstacles to producing them in Pennsylvania, particularly in our era of
electronic document production and filing. Furthermore, while not headquartered
in this state, inTech conducts business in Pennsylvania. There is some convenience
to litigating in Pennsylvania as well because both Replica and the trailer at issue

---

[18] *See Eastern Roofing Sys.*, 2015 WL 679220 at *2.

[19] *See id.* (*citing Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). The parties agree
that venue would be proper in the Northern District of Indiana, the federal district inTech seeks
transfer to.

are located here. In light of the modest inconvenience to inTech, I decline to transfer the action under § 1404(a).

### B.     Personal Jurisdiction

InTech further moves to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Replica does not ague that it has alleged sufficient minimum contacts to Pennsylvania to support the exercise of specific personal jurisdiction. Rather, it argues that, pursuant to 42 Pa. C.S.A. § 5301, inTech has consented to general personal jurisdiction by registering as a foreign corporation doing business in the state.

Section 5301(a)(2)(i) provides that registration as a foreign corporation conducting business in Pennsylvania "shall constitute a sufficient basis of jurisdiction to enable the tribunal of this Commonwealth to exercise general personal jurisdiction over such person . . . and to enable such tribunals to render personal orders against such person or representative." While registration statutes in other states had until recently been interpreted as granting consent to general jurisdiction, Pennsylvania's statute is unusual, perhaps even unique, in its explicit statement to that effect.[20]

In *Bane v. Netlink, Inc.*,[21] the United States Court of Appeals for the Third Circuit held that § 5301 comports with Due Process requirements imposed by the

---

[20] *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532, 538–39 (E.D. Pa. 2019).

[21] 925 F.2d 637 (3d Cir. 1990).

United States Constitution.[22] Normally, this would end the discussion here. However, the United States Supreme Court's 2014 decision in *Daimler AG v. Bauman*[23] has raised questions about *Bane*'s continuing validity. The majority of district courts assessing the question in the wake of *Daimler* have continued to follow *Bane*.[24] However, the Honorable Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania declined to follow *Bane* in a recent, thoughtful opinion in *In re Asbestos Products Liability Litigation (No. VI)*.[25] While I reach a different conclusion here, his analysis is persuasive in important respects.

Traditionally, general jurisdiction attaches only in the states where a corporation is incorporated and where its central decision-making apparatus is located.[26] Prior case law suggested that general jurisdiction could also arise in other states in which a corporation engaged in a "continuous and systematic" course of business.[27] *Daimler* did not completely eliminate the possibility of general jurisdiction arising out of "continuous and systematic" operations in a state; however, it required that such operations would need to be strong enough to

---

[22] *See id.* at 640.

[23] 571 U.S. 117 (2014).

[24] *See In re Asbestos*, 384 F. Supp. 3d at 543.

[25] 384 F. Supp. 3d 532 (E.D. Pa. 2019).

[26] *See Hertz Corp. v. Friend*, 559 U.S. 77, 88, 92–93 (2010).

[27] *See Daimler*, 571 U.S. at 127 (*citing Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

render the corporation "at home" in the state.[28] Expressing reservations toward broader application of general jurisdiction, the Court observed that general jurisdiction arising out of "continuous and systematic" operations would be "an exceptional case."[29]

The question now is whether the Due Process limitations raised in *Daimler* regarding general jurisdiction arising from "continuous and systematic" operations apply with equal force to general jurisdiction arising from *consent*. Courts in other jurisdictions have found Due Process violations in attempts to imply consent to general jurisdiction from more-ambiguous statutes.[30] When analyzing Pennsylvania's clear, direct statement that registration as a foreign corporation constitutes consent, however, the vast majority of cases have concluded that consent is an alternative basis for general jurisdiction not addressed by, and therefore not abrogated by, *Daimler*.[31]

---

[28] *See Daimler*, 571 U.S. at 139 n.19.

[29] *Id.*

[30] *See In re Asbestos*, 384 F. Supp. 3d at 539–41 (discussing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) and *Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016)).

[31] *See, e.g.*, *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 296–97 (M.D. Pa. 2018); *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 653 (E.D. Pa. 2016); *Youse v. Johnson & Johnson*, 18-cv-3578, 2019 WL 233884, at *3–4 (E.D. Pa. Jan. 16, 2019); *Allstate Ins. Co. v. Electrolux Home Prods.*, 18-cv-00699, 2018 WL 3707377, at *4–5 (E.D. Pa. Aug. 3, 2018); *Mendoza v. Electrolux Home Prods., Inc.*, 15-cv-00371, 2018 WL 3973184, at *3–4 (M.D. Pa. Aug. 20, 2018); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 16-cv-665, 2017 WL 3129147, at *11 (E.D. Pa. July 24, 2017); *Hegna v. Smitty's Supply, Inc.*, 16-cv-3613, 2017 WL 2563231, at *3–4 (E.D. Pa. June 13, 2017); *Webb-Benjamin, LLC v. Int'l Rug Grp., LLC*, 192 A.3d 1133, 1139 (Pa. Super. Ct. 2018).

Judge Robreno departed from this consensus in *In re Asbestos*. In doing so, he found that conditioning the right to do business in the state on the surrender to general jurisdiction ran afoul of the unconstitutional conditions doctrine, which prevents the government from conditioning a benefit on the forfeiture of a constitutional right.[32] Of course, this begs the question whether a corporation possesses a constitutional right to avoid general jurisdiction by consent. Judge Robreno found that there was such a right grounded in Due Process.[33] This analysis seems to be in harmony with *Daimler*'s reservations toward expanding general jurisdiction beyond states in which the corporation is "at home." After all, it would seem an odd result if states could circumvent *Daimler*—in theory opening the possibility of corporations being subject to general jurisdiction in all fifty states— through what essentially amount to magic words.

Were I deciding this issue on a blank slate, I would be inclined to follow Judge Robreno's decision in *In re Asbestos*. However, *Bane* remains controlling law in this Circuit. While *Daimler* provides strong reasons to believe that general jurisdiction by consent may be abrogated in the future, it neither addresses this question directly nor compels this outcome logically. For example, a finding that general jurisdiction by consent is an alternative, completely separate basis for general jurisdiction and that the "at home" limitation applies only to general

---

[32] *See In re Asbestos*, 384 F. Supp. 3d at 542.

[33] *See id.*

jurisdiction arising out of continuous and systematic contacts with a forum would be consistent with *Daimler*, even if a betting man may perhaps not wager the farm on that outcome.

For that reason, I follow *Bane* here and find that inTech has consented to general personal jurisdiction in the Commonwealth of Pennsylvania by registering as a foreign corporation under § 5301. InTech's motion to dismiss for lack of personal jurisdiction is therefore denied.

## C.   The "Gist of the Action" and Economic-Loss Doctrines

Next, inTech moves to dismiss Replica's negligence and strict products liability claims under the closely related "gist of the action" and economic-loss doctrines.[34] The former bars tort claims where the gravamen of the allegation is in actuality a claim against a party for breach of its contractual obligations.[35] The latter precludes strict products liability claims where only the product itself was injured.[36] Essentially, inTech argues that this is at its core a contractual dispute and that Replica should not be allowed to recast this as an action in tort through artful pleading.

The gist-of-the-action doctrine applies in four general situations: (1) where the tort claim arises solely from a contract between the parties, (2) where the duties

---

[34] *See Graham Packaging Co., L.P. v. Transplace Texas, L.P.*, No. 1:15-cv-01186, 2015 WL 8012970, at *2 (M.D. Pa. Dec. 7, 2015).

[35] *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014).

[36] *See Graham Packaging Co.*, 2015 WL 8012970 at *2.

allegedly breached were created and grounded in the contract itself, (3) where the liability stems from a contract, and (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.[37] It is important to note that the existence of a contract alone does not automatically trigger the gist-of-the-action doctrine.[38] Nor even does the fact that the alleged misconduct was undertaken while performing contractual duties.[39] Rather, the inquiry must center on the nature of the duty breached; only actions arising directly from an alleged breach of a contractual duty will be regarded as being in contract.[40]

That is the case with Replica's negligence claim. The duty alleged to have been breached was the failure to provide a satisfactory stacker trailer. There is no other misfeasance in the performance of the contract alleged. This duty exists only by virtue of the contract between the parties, and as such it is fundamentally a contractual claim. Therefore, I dismiss Replica's negligence claim under the gist-of-the-action doctrine.

The economic-loss doctrine is similar to the gist-of-the-action doctrine, but it is appropriately applied to claims for strict products liability.[41] "[I]n cases where a

---

[37] See Bruno, 106 A.3d at 67.

[38] See id. at 63.

[39] See id.

[40] See id.

[41] See Graham Packaging Co., 2015 WL 8012970 at *2; see also Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) ("The economic loss doctrine 'prohibits plaintiffs from

product fails to conform and only economic losses result to the product itself and does not cause physical injury or property damage, 'the parties' recovery one against the other for economic losses should be limited to an action on that contract and no additional recovery in negligence or strict liability is permitted.'"[42]

Replica alleges no physical injury or property damage other than to the stacker trailer itself. Replica is therefore limited to any recovery that it could obtain under its contract with inTech, and I dismiss its strict products liability claim.

### D.     Express and Implied Warranty

Finally, inTech moves to dismiss Counts III and IV of the complaint for failure to state a claim. InTech asserts that Replica cannot take advantage of the express warranty because Replica itself failed to abide by its terms.

First, this argument goes only to Replica's express warranty claim. InTech provides no other argument for why Replica's implied warranty claim should be dismissed. Therefore, inTech's motion is denied with respect to Count IV.

As to the express warranty, consideration of its terms is appropriate on this motion to dismiss because it is integral to Replica's claim under it.[43] However, inTech makes arguments about Replica's conduct in relation to the terms of the

---

recovering in tort economic losses to which their entitlement flows only from a contract.'" (*quoting Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995))).

[42] *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 449 (W.D. Pa. 2010) (*quoting N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 926 (Pa. Super. Ct. 1989)).

[43] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

express warranty that go beyond the allegations of the complaint. These arguments are not procedurally proper at this time. I therefore deny inTech's motion to dismiss Count III as well.

## IV.    CONCLUSION

For the reasons set forth above, inTech's Motion to Dismiss Plaintiff's Complaint (Doc. 5) is **GRANTED IN PART** and **DENIED IN PART**.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge